UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

         Plaintiff,      23-CV-1435 (AMN/CFH)

v.

Assorted Jewelry VL: $39,100.00,

         Defendant.

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **HON. CARLA FREEDMAN**<br>United States Attorney for the<br>Northern District of New York<br>100 South Clinton St.<br>Syracuse, NY 13261-7198<br>*Attorneys for Plaintiff* | **ELIZABETH A. CONGER, ESQ.**<br>Assistant United States Attorney |

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On November 16, 2023, Plaintiff the United States of America commenced this action via Verified Complaint for forfeiture *in rem* seeking forfeiture of assorted pieces of jewelry with a collective appraised value of $39,100.00 as property traceable to the proceeds of offenses in violation of 21 U.S.C. § 881(a)(6) ("Defendant Jewelry") and pursuant to Rule G of the Supplemental Rules for Certain Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules" or "Supp. R."). *See* Dkt. No. 1. Presently before the Court is Plaintiff's Motion for Default Judgment and Final Order of Forfeiture under Rule 55(b)(2) of the Federal Rules of Civil Procedure and General Order #15 of the United States District Court for the Northern District of New York. *See* Dkt. No. 10-1 ("Motion"). For the reasons that follow,

Plaintiff's Motion is granted.

## II.  BACKGROUND

### A. Plaintiff's Allegations[1]

This matter arose in connection with an investigation into a drug trafficking organization ("DTO") distributing cocaine and pills containing fentanyl.  *See* Dkt. No. 1 ¶ 7.  Starting in or about May 2022, Drug Enforcement Administration ("DEA") and other federal and local police conducted surveillance on a suspected stash house for the DTO in a second-floor apartment at 1434 Western Avenue, Guilderland, New York.  *Id.* ¶ 8.  During the surveillance, agents identified various individuals involved in the DTO, including Jabree Jones, who was observed via pole cameras accessing the stash apartment on multiple occasions and was the subject of agent-controlled buys of counterfeit pills and cocaine that tested positive for fentanyl.  *Id.* ¶¶ 9-11.[2]  As a result, on May 23, 2023, members of various federal and local agencies (assisted by members of the United States Probation Office) conducted a home contact and search of Jones at his residence located at 211 Sacandaga Road, Apartment 8204, Glenville, New York.  *Id.* ¶ 13.  Jones was present inside the residence at the time, along with his girlfriend, Amirah Barros, and two children.  *Id.* ¶ 14.  During the search of Jones's residence, probation officers found and seized (i) $50,000.00 in U.S. currency from the closet of a child's bedroom; and (ii) the Defendant Jewelry from atop a dresser.  *Id.* ¶¶ 16-17 & Attachment B.  Probation officers also discovered a set of keys later confirmed to unlock and lock the doors of the 1434 Western Avenue stash apartment.  *Id.* ¶¶ 18-19.

---

[1] The facts are drawn from the Verified Complaint.  *See* Dkt. No. 1.  The allegations therein are deemed admitted and assumed to be true for purposes of this Motion.  *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

[2] Jones is considered a "key player" in the DTO.  Dkt. No. 1 ¶ 11.

Agents subsequently executed a search warrant at the stash apartment, wherein they discovered a black safe in the corner of the living room containing:

    i. approximately 737.50 grams of cocaine;

    ii. approximately 3,729 counterfeit oxycodone pills, positively identified as fentanyl;

    iii. a glassine bag consisting of approximately 3.793 grams of identified fentanyl;

    iv. several bags containing 23,907 tablets, positively identified as methamphetamine;

    v. twenty-eight (28) firearms; and

    vi. firearm ammunition.

*Id.* ¶ 21 & Attachment C.

While Jones reported to probation officers that he was employed at NY Sportswear in Schenectady, New York, agents surveilling the DTO never saw Jones at the NY Sportswear location and paystubs provided by Jones appeared to have been counterfeit. *Id.* ¶ 22. Additionally, after executing a search warrant on Jones's phones, agents discovered communications regarding how to acquire counterfeit paystubs, leading agents to determine Jones had no legitimate source of income. *Id.*

Jones's criminal history includes a federal conviction for Conspiracy to Violate the Racketeering Influenced and Corrupt Organizations (RICO) Act, as well as prior felony convictions in New York State for criminal possession of a controlled substance with intent to sell and criminal possession of a weapon. *Id.* ¶ 23.

**B. Procedural Background**

On November 16, 2024, Plaintiff filed its Verified Complaint for forfeiture *in rem*, seeking, *inter alia*, a declaration that the Defendant Jewelry be forfeited and condemned to the use and benefit of the United States. *See* Dkt. No. 1. The same day, the Clerk of Court issued a warrant for arrest of the Defendant Currency, *see* Dkt. No. 2, which was executed on December 4, 2023.

*See* Dkt. No. 5.

On November 17, 2023, Plaintiff served copies of the Verified Complaint, warrant for arrest, and notice to potential claimants on Jones by certified and regular mail to the Schenectady County Jail, 320 Veeder Avenue, Schenectady, New York. Dkt. No. 3; Dkt. No. 11-2 ¶ 3(a).[3] The Schenectady County Jail subsequently confirmed that the packages were received, and the return-receipt card was signed between November 21, 2023, and November 24, 2023. *Id.* The U.S. Attorney's Office also served Jones through his attorney, Kevin Luibrand, on January 17, 2024, by certified and regular mail at Luibrand's place of business, 950 New Loudon Rd., Suite 270 Latham, New York. Dkt. No. 8; Dkt. No. 11-2 ¶ 3(d). Plaintiff also attempted to serve Jones's girlfriend, Amirah Barros, at two of her last known addresses by certified and regular mail, but the return-receipt card was returned both times as "unclaimed." Dkt. No. 3; Dkt. No. 7; Dkt. No. 11-2 ¶ 3(b)-(c).

No verified claim or answer has been filed in this action, and the last date for potential claimants to file a claim was January 16, 2024. *See* Dkt. No. 6.

On February 27, 2024, Plaintiff requested an entry of default and submitted a supporting affidavit. Dkt. Nos. 9, 9-1. On February 28, 2024, the Clerk entered default of the Defendant Jewelry. Dkt. No. 10. On February 29, 2024, the instant Motion was filed. Dkt. No. 11. The next day, Plaintiff sent copies of the corresponding text notice (setting the motion response hearing deadline), as well as copies of the Motion papers (Dkt. Nos. 10 through 10-6), by certified and regular mail to Jones at the Schenectady County Jail, as well as to his attorney at his attorney's place of business. *See* Dkt. No. 11. Plaintiff also sent copies of the same by certified and regular

---

[3] According to the Process Receipt and Return, Jones had been in the custody of the United States Marshals Service since August 3, 2023. *See* Dkt. No. 4.

mail to Barros at two of her last known addresses. *Id.*

### III. STANDARD OF REVIEW

#### A. Default Judgment

Fed. R. Civ. P. Rule 55 "provides a two-step process that the Court must follow before it may enter a default judgment against a defendant." *Robertson v. Doe,* 05-CV-7046, 2008 WL 2519894, at *3 (S.D.N.Y. June 19, 2008). "First, under Rule 55(a), when a party fails to 'plead or otherwise defend . . . the clerk must enter the party's default.'" *Id.* (quoting Fed. R. Civ. P. 55(a)).[4] "Second, pursuant to Rule 55(b)(2), the party seeking [a] default judgment is required to present its application for entry of judgment to the court." *Id.* "Notice of the application must be sent to the defaulting party so that it has an opportunity to show cause why the court should not enter a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)).[5]

Default judgments "are generally disfavored and are reserved for rare occasions." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993). Before a court enters a default judgment, it must "ensure that (1) jurisdictional requirements are satisfied, (2) the plaintiff took all the required procedural steps in moving for [a] default judgment, and (3) the plaintiff's allegations, when accepted as true, establish liability as a matter of law." *Windward Bora, LLC v. Brown*, No.

---

[4] *See also* Northern District of New York Local Rule ("Local Rule") 55.1 (requiring a party seeking a clerk's entry of default to "submit an affidavit showing that (1) the party against whom it seeks a judgment . . . is not an infant, in the military, or an incompetent person (2) a party against whom it seeks a judgment for affirmative relief has failed to plead or otherwise defend the action . . . and (3) it has properly served the pleading to which the opposing party has not responded").

[5] *See also* Local Rule 55.2(b) ("A party shall accompany a motion to the Court for the entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a clerk's certificate of entry of default . . . a proposed form of default judgment, and a copy of the pleading to which no response has been made.").

21-CV-03147, 2022 WL 875100, at *2 (E.D.N.Y. Mar. 24, 2022) (quotation marks and citation omitted).

The decision to grant a motion for a default judgment is within "the sound discretion of the district court." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contrs. Inc.*, 699 F.3d 230, 233 (2d Cir. 2012) (quotation marks and citation omitted). "When evaluating the defendant's liability, the court accepts as true all well-pleaded allegations in the complaint." *Wilmington Sav. Fund Soc'y, FSB as trustee of Aspen Holdings Tr. v. Fernandez*, No. 22-CV-6474, 2024 WL 219092, at *2 (E.D.N.Y. Jan. 22, 2024) (citing *Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019)). However, "the court cannot construe the damages alleged in the complaint as true," and the court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *W. Coast Servicing, Inc. v. Giammichele,* No. 1:19-CV-1193 (GTS) (CFH), 2020 WL 5229374, at *2 (N.D.N.Y. Sept. 2, 2020) (quotation marks and citations omitted).

    B.  **Forfeiture** *in Rem*

"*In rem* forfeiture actions are governed by Rule G of the [Supplemental Rules] and the Civil Asset Forfeiture Reform Act of 2000," 18 U.S.C. § 981 *et seq*. *See United States v. Vazquez-Alvarez*, 760 F.3d 193, 197 (2d Cir. 2014). "The Federal Rules of Civil Procedure also apply to [forfeiture *in rem*] proceedings except to the extent that they are inconsistent with the[ ] Supplemental Rules." Supp. R. A(2); *accord United States v. Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents ($417,143.48)*, No. 13-cv-5567, 2015 WL 5178121, at *4 (E.D.N.Y. Sept. 2, 2015), *aff'd sub nom. United States v. $417,143.48, Four Hundred Seventeen Thousand, One Hundred Forty-Three Dollars & Forty-Eight Cents*, 682 F. App'x 17 (2d Cir. 2017).

6

Under Supplemental Rule G, a complaint for forfeiture *in rem* must:

a) be verified;

b) state the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the Defendant Currency, and venue;

c) describe the property with reasonable particularity;

d) if the property is tangible, state its location when any seizure occurred and—if different—its location when the action is filed;

e) identify the statute under which the forfeiture action is brought; and

f) state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial.

Supp. R. G(2). Furthermore, "[i]f the defendant is not real property . . . the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control." Supp. R. G(3)(b)(i).

Supplemental Rule G(4) sets forth the applicable notice requirements for forfeiture *in rem* actions: the government "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government," Supp. R. G(4)(b)(i), and notice by publication, which is required unless certain conditions are met, can be effectuated by "posting a notice on an official internet government forfeiture site for at least 30 consecutive days." Supp. R. G(4)(a)(iv)(C).

Once the government has commenced a forfeiture *in rem* action, a claimant "who asserts an interest in the [Defendant Jewelry] may contest the forfeiture by filing a claim in the court where the action is pending." Supp. R. G(5)(a)(i); *accord Vazquez-Alvarez*, 760 F.3d at 197. The claimant must file their claim "not later than 30 days after the date of service of the Government's complaint or, as applicable, not later than 30 days after the date of final publication of notice of the filing of the complaint." See 18 U.S.C. § 983(a)(4)(A); *accord* Supp. R. G(5)(a)(ii). "A

7

claimant must serve and file an answer to the complaint or a motion under Rule 12 within 21 days after filing the claim." Supp. R. G(5)(b). However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." 18 U.S.C. § 983(a)(3)(D).

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). "[I]f the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3).

## IV. DISCUSSION

### A. Rule 55

As an initial matter, the Court must determine whether Plaintiff has complied with the procedural requirements for obtaining a default judgment under Rule 55 of the Federal Rules of Civil Procedure. On February 27, 2024, Plaintiff requested a clerk's entry of default under Rule 55(a) and General Order #15, and Plaintiff submitted an affidavit affirming that (i) "[a]ll known potential claimants were served"; (ii) "public notice of this action was published on an official government forfeiture site . . . for thirty consecutive days"; (iii) Plaintiff "believes it has taken reasonable steps to attempt to provide notice of this action to all known, and unknown, potential claimants[;] [s]uch potential claimants have been served with the pleadings in this action, and failed to plead or otherwise defend the action, as provided by the Supplemental Rules"; (iv) "[n]either a verified claim nor an answer has been filed in this action, and the last date for potential claimants to file a claim" had passed; and (5) "no person thought to have an interest in the

[Defendant Jewelry] is an infant, incompetent, or presently engaged in military service." Dkt. No. 9-1 ¶¶ 3-7.  Thus, on February 28, 2024, Plaintiff properly received a clerk's entry of default.  Dkt. No. 10.  Plaintiff then moved for default judgment and attached the clerk's certificate of entry of default, Dkt. No. 11-5, a proposed form of default judgment, Dkt. No. 11-4, a copy of the pleading to which no response has been made, Dkt. No. 11-6, and a supporting affidavit, Dkt. No. 11-2, in satisfaction of Local Rule 55.2(b).  Plaintiff has therefore complied with the procedural requirements of Rule 55 and Local Rule 55.2.

### B. Supplemental Rule G

Because Plaintiff brings an action for forfeiture *in rem*, the Court must also examine whether Plaintiff complied with the requirements of the Supplemental Rules.  *See Vazquez-Alvarez*, 760 F.3d at 197.  In compliance with Supplemental Rule G(3)(b)(i), the Clerk issued a warrant to arrest the Defendant Jewelry.  *See* Dkt. Nos. 2, 4.  Plaintiff has also complied with the notice requirements of Supplemental Rule G(4).  First, Plaintiff published public notice of the action on an official government forfeiture website, www.forfeiture.gov, from November 17, 2023 through December 16, 2023, *see* Dkt. Nos. 6, 11-2 ¶ 4, in satisfaction of Supplemental Rule G(4)(a).  Additionally, Plaintiff satisfied Supplemental Rule G(4)(b) by attempting to provide direct notice to all known potential claimants by means reasonably calculated to reach the potential claimants.  *See* Supp. R. G(4)(b).  Namely, Plaintiff served copies of the Verified Complaint, warrant for arrest of articles *in rem*, and notice to potential claimants on Jones at the Schenectady County Jail and through his attorney via certified and regular mail.  *See* Dkt. Nos. 3, 8, 11-2 ¶ 3(a), (d).  Plaintiff also served its motion papers and the briefing schedule on Jones at the Schenectady County Jail and through his attorney via certified and regular mail.  *See* Dkt. No. 12.  Plaintiff also attempted to serve copies of the Verified Complaint, warrant for arrest of articles *in rem*, and notice

9

to potential claimants, as well as the motion papers and briefing schedule, on the only other known potential claimant, Barros, at her last known addresses via certified and regular mail. *See* Dkt. Nos. 7, 11-2 ¶ 3(b)-(c), 12. This is sufficient to satisfy Supplemental Rule G(4). *See United States v. Starling*, 76 F.4th 92, 96 n.2 (2d Cir. 2023) ("The government need not provide formal service of process in a civil forfeiture proceeding; it must only give notice 'to any person who reasonably appears to be a potential claimant on the facts known to the government,' and it may do so by any 'means reasonably calculated to reach the potential claimant.'" (quoting Supp. R. G(4)(b)(i), (iii)(A))).

Plaintiff must also satisfy the requirements of Supplemental Rule G(2). The Verified Complaint is verified in satisfaction of Supplemental Rule G(2)(a), Dkt. No. 1 at 1, 7; states the grounds for subject-matter jurisdiction, *in rem* jurisdiction over the Defendant Jewelry, and venue in satisfaction of Supplemental Rule G(2)(b), *id.* ¶¶ 4-6; describes the property with reasonable particularity in satisfaction of Supplemental Rule G(2)(c), *id.* ¶¶ 2; states the Defendant Jewelry's location when seizure occurred and when the action was filed in satisfaction of Supplemental Rule G(2)(d), *id.* ¶ 17; and identifies the statute under which the forfeiture action is brought in satisfaction of Supplemental Rule G(2)(e). *Id.* at 1.

### C. Sufficiency of the Verified Complaint

The Court must also determine whether the verified complaint "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," *see* Supp. R. G(2)(f),[6] and whether Plaintiff "[has] establish[ed] that there was a

---

[6] Although "a defendant who defaults thereby admits all well-pleaded factual allegations contained in the complaint," a court "need not agree that the alleged facts constitute a valid cause of action." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (citations and internal quotation marks omitted). And the Second Circuit has "suggested that, prior to entering default judgment, a district court is required to determine whether the plaintiff's allegations

substantial connection between [Defendant Jewelry] and the offense" on which Plaintiff's theory of forfeiture is premised. *See* 18 U.S.C. § 983(c)(3). Because these questions both involve examination of the sufficiency of the facts alleged in the Verified Complaint, the Court analyzes them together.

Plaintiff premises its forfeiture *in rem* action on 21 U.S.C. § 881(a)(6). *See* Dkt. No. 1 at 1. Specifically, Plaintiff alleges that the Defendant Jewelry constitutes proceeds traceable to the sale of narcotics. *See id.* at 1, and ¶¶ 7, 27-28.

Under 21 U.S.C. § 881(a)(6),

"[a]ll moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter"

are "subject to forfeiture to the United States."

"[T]he burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture." 18 U.S.C. § 983(c)(1). Under Supplemental Rule G(2)(f), the Verified Complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." And because Plaintiff's theory of forfeiture is that the Defendant Jewelry was used to commit or facilitate or was involved in the commission of an alleged violation of 21 U.S.C. §§ 841 and 846, the Government must "establish that there was a substantial connection between [Defendant Jewelry] and the [alleged

---

establish the defendant's liability as a matter of law." *Id.* (alterations, citation, and internal quotation marks omitted). Accordingly, this Court "considers whether the unchallenged facts" alleged in the Verified Complaint "constitute a legitimate cause of action." *See United States v. Two Hundred & Eighty Thousand Dollars & Zero Cents, More or Less, in U.S. Currency*, No. 20-CV-4442, 2021 WL 2980540, at *2 (E.D.N.Y. July 14, 2021) (citation and internal quotation marks omitted).

violation of 21 U.S.C. §§ 841 and 846].*"* 18 U.S.C. § 983(c)(3).  However, "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property."  18 U.S.C. § 983(a)(3)(D).

The Court finds Plaintiff has sufficiently pled a substantial connection between the Defendant Jewelry and drug trafficking.[7]  First, the Defendant Jewelry was discovered near $50,000.00 in U.S. currency.  The possession of such a large sum of cash is probative of illegal activity.  *See United States v. $31,990 in U.S. Currency*, 982 F.2d 851, 854 (2d Cir. 1993) (presence of a large amount of cash supports an inference of illegal activity); *United States v. $2,500 in U.S. Currency*, 689 F.2d 10, 16 (2d Cir. 1982) (noting that cash amount of $2,500 "is substantially greater than is commonly kept in residential premises by law-abiding wage earners."). Additionally, Jones had been observed at a suspected stash house on multiple occasions, sold controlled substances to undercover agents, and possessed a set of keys that unlocked and locked the doors of the stash house (where hundreds of grams of illegal drugs, thousands of counterfeit pills, and dozens of firearms were discovered).  *See $11,640.00 in U.S. Currency*, 2014 WL 4217389 at *1, 8 (controlled buy of narcotics and subsequent search warrant resulting in successful retention of narcotics were both relevant factors in determining a substantial connection to drug trafficking); *cf. United States v. Willis*, 14 F.4th 170, 184-85 (2d Cir. 2021) (adequate support for verdict that firearms were connected to drug trafficking where various drugs were found near the guns and were kept at a residence that the defendant did not live but had the keys to).  Jones also

---

[7] Plaintiff "need not prove that there is a substantial connection between the property and any specific drug transaction.  Instead, the Government may prove more generally, based on a totality of the circumstances, that the property is substantially connected to narcotics trafficking."  *United States v. $11,640.00 in U.S. Currency*, No. 7:13-CV-184 (TWD), 2014 WL 4217389, at *6 (N.D.N.Y. Aug. 25, 2014) (quoting *United States v. $22,173.00 in United States Currency*, 716 F. Supp. 2d 245, 250 (S.D.N.Y. 2010)).

appears to have lied to probation officers regarding whether he had a legitimate source of income that would otherwise justify the presence of $50,000.00 cash and $39,100.00 in jewelry inside his residence. *See $11,640.00 in U.S. Currency*, 2014 WL 4217389 at *8 (citing cases); *see also U.S.A. v. $175,260*, 741 F. Supp. 45, 48 (E.D.N.Y. 1990) (misleading DEA agents considered factor in analyzing merits of forfeiture action).

Considering these factors alongside the other evidence of narcotic activity, including Jones's "prior . . . arrests and convictions for [] drug-related offenses," the Court has "ample basis upon which to conclude that the [Defendant Jewelry] is connected to the sale of controlled substances[.]" *United States v. $8,880.00 in U.S. Currency*, 945 F. Supp. 521, 526 (W.D.N.Y. 1996) (citing *$31,990 in U.S. Currency*, 982 F.2d at 855).

Plaintiff has thus met its burden to establish that the Defendant Jewelry is subject to forfeiture. *See* 18 U.S.C. §§ 983(c)(1), 983(c)(3); *see also* Supp. R. G(2)(f); 18 U.S.C. § 981(a)(1)(A). Accordingly, Plaintiff's Motion is granted.

V. **CONCLUSION**

Accordingly, the Court hereby

**ORDERS** that Plaintiff's Motion for Default Judgment and Final Order of Forfeiture, Dkt. No. 11, is **GRANTED**; and the Court further

**ORDERS** that the Clerk serve a copy of this Memorandum-Decision and Order, as well as the forthcoming Final Order of Forfeiture, on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: <u>August 15, 2024</u>
Albany, New York

Anne M. Nardacci
U.S. District Judge

13